## TEXAS AND PACIFIC RAILWAY COMPANY, Appellant,

v.

### Edgar L. MEEKS, Appellee.

No. 3508.

Court of Civil Appeals of Texas.

Eastland.

Feb. 19, 1960.

Rehearing Denied June 10, 1960.

Second Rehearing Denied Sept. 2, 1960.

Mays, Leonard & Moore, Sweetwater, John A. Coffee, Big Spring, for appellant.

Warren Burnett and Clarence E. Keys, Odessa, Hartman Hooser, Big Spring, for appellee.

## COLLINGS, Justice.

Edgar L. Meeks brought suit against the Texas and Pacific Railway Company to recover damages alleged to have been sustained by him in a railroad crossing collision. He alleged that the pickup which he was driving struck the engine of a short freight train which defendant's employees negligently caused to be operated on and across the highway in front of plaintiff's approaching motor vehicle. The case was tried before a jury which found both plaintiff and defendant guilty of negligence proximately causing the collision. The jury, however, answered special issues on discovered peril adversely to the defendant, finding that just prior to the collision Meeks was in a position of peril, that one or more of defendant's employees discovered Meeks' perilous position, realized that Meeks would probably not extricate himself from such perilous position in time to avoid the accident, that appellant's employee could have, by the use of the means at hand consistent with the safety of the train and its occupants, avoided the collision, and, after making such discoveries failed to use all such means to avoid the collision. Based upon the findings of discovered peril, judgment was entered for plaintiff in the sum of $38,000. The railway company has appealed.

In appellant's first three points it is contended that the court erred in submitting issues concerning discovered peril to the jury because there was no evidence to warrant same, and in overruling his motion to set aside the answers to such issues and render judgment for appellant because such answers have no support in the evidence. In this connection appellant contends the evidence shows it was a physical impossibility for the train crew to have avoided the accident after its employee Dyer discovered that Meeks was about to hit the train.

An essential element in the establishment of liability under the doctrine of discovered peril is discovery of the perilous position of the injured party in time to have avoided the accident and resulting injury. Parks v. Airline Motor Coaches, 145 Tex. 44, 193 S.W.2d 967; Texas & N. O. Ry. Co. v. Grace, 144 Tex. 71, 188 S.W. 2d 378; Texas & Pacific Ry. Co. v. Breadlow, 90 Tex. 26, 36 S.W. 410; Northern Texas Traction Co. v. Weed, Tex.Com. App., 300 S.W. 41.

We are of the opinion that the evidence viewed in its most favorable light to the verdict and the judgment does not show that the perilous position of Meeks was discovered by the employees of appellant in time to have avoided the accident. The accident occurred on a highway west of Big Spring at the point where it crosses the spur railway track leading to Webb Air Force Base. The highway has four lanes of traffic, each 11 feet in width. The two south lanes are for eastbound traffic and the two north lanes are for traffic going west. At the time of the accident, appellee was driving west along the highway in the inside and most southerly lane for westbound traffic. The evidence shows that

Meeks approached the spur track crossing at a speed of approximately 35 miles per hour and did not see the train until he was within 25 or 30 feet from it, which was too late for him to stop, and that he ran into the engine.

Appellant's train, composed of an engine, an empty boxcar and a caboose, had been to Webb Air Force Base and was returning to Big Spring. The train was moving north with the engine pulling the train. When the train left the base, the engine foreman, Mr. J. L. Dyer, rode on the front of the engine for the purpose of observing traffic at crossings and giving stop and start signals to the engineer. It is upon his testimony and the surrounding facts and circumstances that appellee relies to show discovered peril. The evidence shows that the train stopped on a signal from Dyer when the engine approached the south edge of the highway crossing where the accident occurred. Then Dyer gave the engineer a signal to proceed and the train moved slowly northward until Dyer gave another stop signal to allow an eastbound automobile to pass. At that time, part of the train was in the main traveled portion of the highway, about 20 or 25 feet north from the first stop. At this second stop Mr. Dyer saw Meeks' vehicle approaching from the east about a block away. He testified that he assumed Mr. Meeks saw the train and that he gave the "go" signal and the train proceeded north over the crossing. The speed at which the train was moving at the time was estimated to be from two to three miles per hour. Mr. Dyer stated that he assumed Mr. Meeks would stop since the train was already on the highway completely over one crossing. When Dyer first saw Meeks approaching, about a block east of the crossing, he was not bound to anticipate that Meeks would continue and negligently collide with the train. Ft. Worth & Denver Ry. Co. v. Shetter, 94 Tex. 196, 59 S.W. 533; Panhandle & S. F. Ry. Co. v. Napier, 135 Tex. 314, 143 S.W.2d 754, 756.

Dyer further testified that he took his eyes off the Meeks' vehicle momentarily and when he again looked toward the east he saw the Meeks' car within about 30 feet of the train. There is no testimony, or circumstance in evidence, indicating that Dyer discovered appellee's perilous position before he was within 30 feet of the train. Since appellee was traveling at a speed of 35 miles per hour, the discovery by Dyer of appellee's peril was less than one second before the collision. For the collision to have been avoided, it would have been necessary during that one second for Dyer to signal the engineer, for the engineer to react to the signal and apply the brakes, and for the brakes to stop the train before it came into the pathway of appellee's approaching car. There was no evidence of probative force to the effect that the employees of appellant discovered Meeks' perilous position in time to have avoided the collision. On the contrary, the evidence shows that when appellant's employees discovered Meeks' peril it was too late for them to have avoided the collision. The evidence, as a matter of law, did not raise the issue of discovered peril. Martin v. Texas & N. O. Ry. Co., Tex.Civ.App., 236 S.W.2d 567 (Writ Ref.).

Mr. Dyer further testified that he gave what he called the "wash out" or stop signal when he saw the Meeks' car about 30 feet away and jumped to the left side of the engine from the right front side where he had been riding. Concerning the location of the engine at the time of the collision, Dyer testified that "we were over the west bound traffic side where they go west, when he hit us." The engineer testified that the impact occurred a little in front of the cab where he was sitting. The cab is shown to be on the back part of the engine. The engine has an overall length of 44 feet and 5 inches. Appellee Mceks identified a picture of the engine and placed the point of impact at the front wheels and the picture shows visible marks on the large bar covering the front wheels. The evidence further shows that the back end of the bar covering the front wheels is 10 or 12 feet from the front end of the engine. The evi-

dence is therefore undisputed that the point of collision on the engine was on the front wheels about 10 or 12 feet back from the front end of the engine. The fastest rate of speed attributed to the train by any witness was three miles per hour, or about four feet per second. Since appellant's engineer, Dyer, discovered the perilous position of Mr. Meeks less than a second before the collision, it is obvious that the engine traveled less than four feet between the time of discovery of the peril by Dyer and the time of the collision. The only reasonable conclusion that can be reached from the undisputed evidence is that the engine was already in the pathway of Meeks' car when appellee's employees discovered the peril and it was then too late to have avoided the collision by stopping the train. If the train had stopped at the exact instant that Dyer saw Meeks' approaching vehicle the second time, the collision would still have occurred, and the train would have been struck by Meeks' car at a point about six or eight feet back of the front end of the engine.

Since both appellant and appellee are guilty of negligence proximately causing the collision and there was no probative evidence raising a fact issue on the question of whether appellee's perilous position was discovered by the employees of appellant in time for them to have avoided the collision, the court erred in not rendering judgment for appellant. It is not necessary for us to consider other points raised by appellant.

The judgment of the trial court is reversed and judgment is rendered for appellant.

### On Motion for Rehearing

Appellee Meeks has filed an able motion for rehearing vigorously urging that we erred in holding there was no evidence of probative force showing that appellee's perilous position was discovered by the employees of the railway company in time for them to have avoided the collision, and erred in holding that, as a matter of law, the evidence viewed in its most favorable light to the verdict and the judgment did not raise the issue of discovered peril. In support of this contention, appellee points out testimony which he urges is inconsistent with and contrary to our determination of certain material facts. He particularly refers us to the testimony of the witness Dyer that the engine was just barely approaching the inside westbound lane when he saw appellee's automobile the second time and that if the engineer Baker had reacted to the "wash out" signal fast enough, appellee could possibly have passed safely in front of the train. Appellee urges the above testimony by Dyer as evidence of probative force showing that, contrary to his direct testimony, he (Dyer) discovered appellee's perilous position when appellee was more than 30 feet away from the crossing and in time for appellant, by the use of due care, to have avoided the collision. To determine the full import and meaning of Dyer's testimony, it is necessary to consider it in context.

Dyer's testimony, in connection with that stated above, was, in effect, that if the engineer had been able to and had stopped promptly in response to the signal, appellee might have avoided the collision "by swerving over toward his left to miss us," or "possibly could have" passed safely in front of the train, or "maybe by stopping if his brakes had been good". Dyer also testified: "Other people I have worked with could have acted more promptly than he (Baker) did. * * * Mr. Baker is not as capable of acting on a signal as fast as other men physically." Dyer further testified that such inability on the part of Mr. Baker was on account of age.

Any negligence of appellant railway company based upon the fact that its employee Baker did not act on Dyer's "wash out" signal with sufficient rapidity because of his age is not available in support of the issue on discovered peril. Such negligence, if any, was original negligence,

in existence prior to appellant's discovery of the perilous position of appellee. The doctrine of discovered peril involves only that negligence arising after knowledge of the danger is acquired. 30–B Tex.Jur. 323; Terry v. English, 130 Tex. 632, 112 S.W.2d 446; Cannady v. Dallas Railway & Terminal Company, Tex.Civ.App., 219 S.W.2d 816.

Conceding appellee's contention that the above testimony by Dyer constitutes probative evidence tending to show that he discovered appellee's perilous position when appellee was more than 30 feet away from the point of collision, we still cannot agree that such evidence raised a fact issue on the question of whether the railway company's employees discovered appellee's perilous position in time to have avoided the collision. Appellee's contention is, in effect, that if his perilous position was discovered by Dyer when the front of the engine was at the center of the highway, "just barely approaching the inside westbound lane", and that the front of the engine at the time of the collision was from 13 to 17 or more feet past the center line of the highway (which latter fact we consider to be conclusively shown) then with the engine traveling at not more than 4.38 feet per second the employees of appellant had about four seconds in which to avoid the collision and if the train was traveling at only 2.92 feet per second, such employees had more than six seconds to avoid the collision and that in either event there was ample time for them to have, by the use of due care, avoided the collision. We cannot agree with this contention.

Appellant's employees did not have all of the time after discovery of appellee's peril to avoid the collision. They had only that time between Dyer's discovery of the peril and the time when the train passed in front of and in the pathway of appellee's approaching car. This is true because the undisputed and unexplained testimony of appellee himself was to the effect that he did not see the train until he was within 30 feet of it; that he was in the center westbound lane and that he immediately applied his brakes but it was too late for him to stop. He did fail to stop and did run into and collide with the train.

██ Under this evidence the only way that appellant's employees could have avoided the collision would have been to stop the train before it passed in front of and into the pathway of appellee's car. The burden was on appellee to establish this fact. The evidence does not show the exact path of appellee's car in the center westbound lane as it approached the point of the collision. Under the evidence it could have been within a foot or two of the center of the highway as appellee was preparing to make a left turn. Since the burden was on appellee we cannot assume that it was not. If the front of the train was at the center of the highway when Dyer discovered appellee's peril it was only one or two feet away in distance and a fraction of a second in time, from the pathway of appellee's approaching car. It was only about eight feet in distance and approximately two or three seconds in time from being completely across the pathway of the approaching car. To stop the train after Dyer discovered Meek's peril from such position, the following time consuming things were necessary:

(1) Dyer's reaction time after discovery of the peril;

(2) Dyer's signal to Baker;

(3) Baker's reaction time to the signal before applying the brakes; and

(4) The braking time required to stop the train.

Appellee Meeks did not discharge his burden of showing that appellant could, under the circumstances, by the use of due care, have stopped the train in time to have avoided the collision. He established that he did not see the train until it was too late for him to stop. Even though he made full application of his brakes when he saw the

train, he was not able to stop but ran into and collided with the train. Appellant was entitled to time after discovery of the peril for its employees to react to the realization of the danger and to act upon that realization. They did not have that time. As a matter of law the time was too short after Dyer's discovery of appellee's peril for the railway company's employees to stop the train before it passed in front of appellee's car. Any finding to the contrary would be pure conjecture. Dyer's statement, in effect, that if the engineer had been able to and had responded to the signal as fast as other engineers, appellee "possibly could have" passed in front of the train, is on its face a conjecture or guess. If, however, the statement should be considered as an opinion of an expert or nonexpert witness, it is still not evidence of probative force in support of the finding of discovered peril. The value of a conclusion or of opinion evidence is no stronger than the facts upon which it is based. 32 C.J.S. Evidence § 569, pp. 395, 396; Insurance Company of North America v. Creech Drug Store, 264 Ky. 364, 94 S.W.2d 654; Pritchard v. Henry, Tex.Civ.App., 200 S.W.2d 651 (Ref. N.R.E.). The facts in this case do not support an opinion, conclusion or finding that appellant's employees discovered appellee's peril in time to have avoided the collision. No basis for recovery was established.

Appellee particularly urges a consideration of the case of Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561. The facts of that case are clearly distinguishable from those of the instant case. In the Ford case discovery of peril occurred when the train was about 100 feet from the crossing. The train continued at the same rate of speed (about 15 miles per hour) to the crossing where it struck the automobile. The evidence showed that the train, traveling at that speed, could have been stopped in less than 300 feet. A slight reduction in the rate of speed by the train would have permitted the car to cross the track without a collision. There was evidence tending to show that the brakes on the train were not applied, that there was time for application of brakes and some reduction in speed, and consequently evidence of probative force showing discovery of peril in ample time for the employees of the railway company to have avoided the collision. The facts of the instant case are entirely different. They are comparable to those in Martin v. Texas & N. O. Ry. Co., Tex.Civ. App., 236 S.W.2d 567 (Writ Ref.). In that case it was held that the evidence did not raise the issue of discovered peril and a writ of error was refused by our Supreme Court. The facts of the Martin case are so similar to those of the instant case that the holding therein is, in our opinion, controlling. See also Waldeck v. Watts, Tex. Civ.App., 326 S.W.2d 913 (Ref.N.R.E.); Schuhmacher v. Posey, 147 Tex. 392, 215 S.W.2d 880; Hall v. National Supply Co., 5 Cir., 270 F.2d 379.

Appellee's motion for rehearing is overruled.