**HEAVY HAULERS, INC., and Dalton Hensley, Appellants,**

v.

**Mrs. Billy PRECISE, Individually and as Next Friend for Kenneth Edward PRECISE and Anna Lou Precise, Minors, Appellees.**

No. 7277.

Court of Civil Appeals of Texas.

Texarkana.

July 18, 1961.

Rehearing Denied Aug. 15, 1961.

Norman Russell, Atchley, Russell & Hutchinson, Texarkana, Traylor Russell, Mt. Pleasant, for appellants.

Dixie & Schulman, Houston, Boyet Stevens, Daingerfield, for appellees.

CHADICK, Chief Justice.

This is a common law tort action. Mrs. Billy Precise, individually, and as next friend and acting for Billy Precise's two minor children, Kenneth Edward and Anna Lou, as plaintiffs, sued Heavy Haulers, Inc., Dalton Hensley, and C. W. Craig, for damages accruing as the result of Billy Precise's injury and death in an unusual vehicular accident. The jury trial resulted in a judgment for plaintiffs against Heavy Haulers, Inc., and Dalton Hensley. The action against C. W. Craig was dismissed, and Heavy Haulers, Inc., and Hensley have appealed. The judgment of the trial court is reversed, and judgment rendered that the appellees take nothing.

On the morning of Saturday, November 22, 1959, Dalton Hensley, a truck driver employed by Heavy Haulers, Inc., drove a tractor-trailer rig, referred to herein as a truck, to McClellan's automobile service station in the town of Lone Star, Morris County, and left it to be washed. Around noon he returned and found that as a result of a hose being broken only the front half of the truck had been washed. The station owner asked Hensley to turn the truck around and back it into the washrack. Hensley undertook to comply with this request and the owner instructed an employee, Billy Precise, to help by guiding Hensley.

Precise got back of the truck and moved backwards with the truck's movement as it backed into the washrack. Precise had one hand raised as a signal, and a soft drink bottle in the other. The station owner and Hensley's wife were both nearby in the station office, but neither actually watched the truck movement after it started. They became aware of some mishap upon hearing an outcry from Precise. McMillan, the station owner, then saw Precise pinned against the washrack's back wall by the truck with his hands pushing against the bed, and McMillan called to Hensley as he was dismounting from the cab to pull the truck forward. This Hensley did, and Precise slumped to the floor. An ambulance was called, and Precise was carried to a hospital and died from his injuries the following day.

Hensley's testimony is the only evidence in the record regarding Precise's action in directing him in the backward movement of the truck just prior to and at the time of the accident, except a statement by Precise admitted in the evidence as res gestae,[1] that he signaled for a stop before he was pinned against the wall. Hensley testified that he could back the truck to within a foot of a wall, or other object, without striking it, and that on this occasion he kept Precise within view at all times, as he slowly backed the truck into the washrack and stopped within two feet of the back wall. He said Precise did not give him a signal to stop, that he stopped because he thought he was back far enough. He testified he applied the brakes, pulled up the emergency brake, killed the engine, and shifted to first gear, and was partly out of the cab when McMillan called to him to pull forward. It was after he pulled forward that he first saw Precise slumped onto the floor and became aware the movement of the truck had injured

him. Other facts will be stated in the course of discussion of issues presented by the appeal.

The jury found Hensley negligent with respect to lookout, control, and application of brakes, and that such was a proximate cause of Precise's injury. At the same time, the jury answered that Precise was negligent in voluntarily placing himself between the truck and the wall, and that such negligence was a proximate cause of the injury he sustained. Issues relevant to the law of discovered peril were submitted and answered favorably to the appellees. The discovered peril findings became the basis of the trial court's judgment. The appellants attacked the discovered peril issues as being without support in the evidence.

■ After analyzing the evidence this court has concluded that the evidence does not support the jury findings. That is, there is no evidence that Hensley discovered Precise's peril, and no evidence that Hensley failed to use the means at his command to avoid injury to Precise. In analyzing the proof the rule will be heeded that only evidence and permissible inferences and deductions therefrom tending to support the jury's finding will be considered and its probative value assayed. Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696; Biggers v. Continental Bus System, Inc., 157 Tex. 351, 298 S.W.2d 79, 303 S.W.2d 359; Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561.

■ The evidence indicates that it was necessary that the truck be placed well into the washrack, with the rear end very near the back wall. Such close quarters indicate that a coordination of action by Hensley and Precise was contemplated, and that action of one was to be dependent to some extent upon the other's action and would be

---

1. Appellants assigned the trial court's admission of this statement as error and have briefed the question. The disposition made of the case does not require this court to reach such point; reference to the signal given by Precise throughout this opinion is made in an effort to state the evidence in its most favorable aspect from the appellees' standpoint without regard to the merit of appellants' point in this respect.

taken promptly as the washrack presented little room for maneuver.

Hensley knew Precise was in the projected path of the moving truck, and Precise was aware that it was approaching him and was free to remove himself from the truck's path until the brief period of time just prior to being struck. Being aware that Precise was in the path of the truck's projected movement, Hensley knew that unless he stopped the truck before reaching the back wall, or Precise removed himself from its projected course, the truck would strike Precise.

It seems elementary that application of the discovered peril doctrine must be made on the basis of facts surrounding the truck driver and the injured party, and their duties and obligations connected with the common endeavor to back the truck into the washrack. It also seems unnecessary to demonstrate that the common endeavor participated in by Hensley and Precise differentiates this case from those in which the vehicle driver and the injured party are strangers, and there is no common design between them to follow a pre-arranged concert of action.

 On cross examination Hensley testified that he considered Precise's position at the rear of the truck, retreating before its backward movement toward the washrack wall, to be dangerous; that so located Precise was in danger during the back-up operation. As carried out, spotting the truck on the washrack had elements of unusual danger. However, the general danger to Precise inherent in the procedure, and known to Hensley from the inception of the truck movement, is distinguishable from a perilous position as contemplated by the discovered peril doctrine. Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561, 567, quotes with approval language defining peril used in Galveston, H. & S. A. Ry. Co. v. Wagner et al., Tex.Com.App., 298 S.W. 552, 553, as follows:

" 'In order for a person to be in peril, it is not necessary that bodily injury will certainly be suffered by him. He is in peril whenever he is pursuing a course which probably will terminate in serious bodily injury to him. Whenever it reasonably appears to a second person, from facts and circumstances within his knowledge, that a person is pursuing such a course and probably will pursue it to the end, then, in such event, the second person is held to have knowledge of the peril of the other.'
* * * "

The definition makes it clear the general danger faced by Precise in undertaking a dangerous job is different from the immediate danger confronting him when the movement of the truck created a situation in which injury to Precise would probably result unless Hensley acted to avoid it. Peril as contemplated by the discovered peril doctrine is that which is immediate, clear and present. In attempting to direct Hensley, dangerous though it might have been on account of his position, Precise was not pursuing a course which would terminate in injury to him until the truck closed in upon him so closely that Hensley discovered (realized) that Precise would probably be injured unless he (Hensley) acted to prevent it. In judging the danger of Precise's position, Hensley could assume that Precise would act in the interest of his own safety and move from between the truck and the wall to avoid injury. It was only when Hensley realized that Precise would probably be injured that the duty befell Hensley to take action to avoid it. See Sisti v. Thompson, 149 Tex. 189, 229 S.W.2d 610, and cases cited therein.

 The jury found that Hensley discovered that Precise was in a perilous position at such time and distance that by exercise of ordinary care he could have avoided injuring Precise. The first premise relied upon to support the jury finding is that Precise signaled Hensley to stop the truck, that Hensley did stop, and after stop-

ping negligently released or inadequately applied the brakes. The second premise is that the truck struck Precise before stopping. The two theories, though in conflict, may be considered in this review, as the nature of the evidence is such that a part may be disregarded when in conflict on one premise without destroying its value when relied upon to support the other premise.

It will be assumed that the truck stopped two feet from the wall, or at some other undisclosed distance, and that thereafter the brakes were inadequately applied or negligently released, and the momentum of the fly-wheel caused the truck to lurch backwards and pin Precise against the wall, and a test of the validity of appellees' first premise will be made on that factual basis.

The appellees insist that it may be inferred from the fact that Precise signaled for a stop, Hensley then discovered Precise was in immediate peril. Under the circumstances of this case such inferences cannot be drawn because the project of spotting the truck contemplated the truck would be stopped and would stop on signal. There is no evidence of anything unusual in Hensley's manner of stopping. In Texas & N. O. R. Co. v. Grace, 144 Tex. 71, 188 S.W.2d 378, opinion adopted, Judge Hickman said that sounding the whistle and ringing the bell of a railroad engine at a point the law required such signals to be given was not evidence that at such time and point the engineer discovered the peril of the injured party in his position on the tracks ahead of the engine in the absence of something unusual in the manner of signaling. The factual situation of this case and the Grace case in this respect are very similar.

However, there are other reasons why the giving of the signal and stopping the truck are not evidence of discovery or realization. Hensley testified that he had never had the truck he was then driving, or any other truck, jerk or lurch after he applied the brakes, pulled up the emergency brake, killed the engine and shifted to first gear, and did not know that a truck would

do so, and that on this occasion the truck did not lurch. An expert testified that a truck such as the one operated by Hensley could be made to lurch or jerk while the brakes were set and the gears engaged by suddenly releasing the clutch just before or at the time the motor was shut off. The lurch would be forward or backward according to the set of the gears.

Hensley's testimony may be disregarded, in whole or in part, but to do so leaves the record bare of evidence of any action that could or might cause the truck to lurch. No evidence was admitted that Hensley knew or should have known that the truck would or might lurch under the circumstances described.

Granting a complete cessation of movement of the truck and the absence of evidence that Hensley knew or should have known that the truck would or might lurch, could the jury reasonably conclude that it reasonably appeared to Hensley that Precise, standing between the truck and the wall, was pursuing a course which probably would terminate in injury to him? The question must be answered in the negative. When the movement of the truck ceased, any peril created by the movement ceased. The truck at a standstill could not possibly imperil Precise. For Precise to be harmed by the truck after it first stopped a second truck movement was required. Not only does it appear that Precise's position was not made perilous by the first movement of the truck, but there is a complete absence of any evidence that Hensley realized Precise was in peril at that time. Such realization is not inferable from Hensley's testimony, or his overt activity or proof of knowledge on his part that might be the equivalent of realization.

■ The time or point at which Hensley's realization of Precise's peril occurred must have some factual base in the evidence, though it may be established by circumstances. See Creech v. Thompson, 156 Tex. 561, 297 S.W.2d 817; Texas & N. O. R. Co. v. Goodwin, Tex.Civ.App., 40 S.W.

2d 182, wr. ref., and other cases cited in those opinions. The jury was not privileged to indulge in speculation, surmise or conjecture in reaching a conclusion. Turner v. Texas Company, 138 Tex. 380, 159 S.W. 2d 112; Texas & N. O. R. Co. v. Grace, 144 Tex. 71, 188 S.W.2d 378, opinion adopted. No case has come to the attention of the court in which the operator's realization of the injured party's peril, a subjective condition of the operator's mind, has been inferred simply because the injured party was visible at all times to the operator of the moving vehicle inflicting injury. In all the cases the courts require proof of overt circumstances, or proof from which realization may be inferred, or knowledge in the possession of the operator which was the same as realization under all the circumstances. Creech v. Thompson, supra (as interpreted in Safeway Stores, Inc. v. White, Tex., 348 S.W.2d 162, 164), and Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561, are leading cases in which clear observation of the injured party combined with the action of the operator, or the possession of peculiar knowledge equivalent to realization, were said to raise the issue or support the conclusion. Safeway Stores, Inc. v. White, supra, supports the views here expressed, and says:

> "The 'could have' or 'should have' standard for measuring the proof required to raise the discovery issue has never been recognized by this Court and will not be adopted now. Actual discovery is an essential element of the doctrine of discovered peril as applied in Texas. * * * The trier of fact is not required to accept the testimony of the defendant or his agent, and discovery may be established by circumstantial evidence. Where there is no direct evidence raising the issue, however, the plaintiff must prove facts and circumstances from which it can fairly be inferred that the defendant did actually become aware of the peril."

In resolving conflicts in the evidence the jury could have disregarded Hensley's testimony that Precise did not signal, and that he, Hensley, stopped the truck two feet from the wall. The jury might reasonably have concluded that Precise signaled the truck to stop and that Hensley ignored the signal, but Precise, expecting him to stop, did not move from between the truck and the wall. Or it may have believed that Hensley's observation of the surroundings and his skill in judging distance in a similar operation should have caused him to realize Precise was in imminent danger of injury, that is a position of peril, at some point or time before the truck actually struck Precise. Proceeding upon this view of the evidence, the record will be analyzed to determine whether or not there is evidence that Hensley realized before the truck struck Precise that Precise was in a position of peril.

The jury could not by disbelieving convert Hensley's testimony that he stopped two feet from the wall into a fact that he began stopping at a distance of two feet from the wall, but did not actually stop until much closer when he struck Precise, and then use that finding as the basis for a conclusion that Hensley realized Precise's peril when the truck was about two feet from the wall.

The case of Turner v. Texas Company, 138 Tex. 380, 159 S.W.2d 112, is nearer in point to this phase of the present case than any other case called to the court's attention, though the same question is discussed in Texas & N. O. R. Co. v. Grace, 144 Tex. 71, 188 S.W.2d 378, opinion adopted.

Briefly stated, the facts in the Turner case were these: The injured party entered his bread truck after observing the adjacent highways in all directions. He could see that they were clear except for one car visible a mile or a mile and a quarter from him, but he was unable to tell whether it was moving or standing still. After entering his truck it took him about a minute to cross the highway and reach a place ten to fifteen

feet off the pavement where he was struck. Judge Smedley says, in the course of his opinion, that the jury might reasonably have found from the evidence that the driver of the automobile that struck the bread truck actually saw the truck at all times, but that having it under observation for the time it took to drive a mile or more is no evidence tending to prove when the bread truck driver's position became perilous, or when the automobile driver discovered or realized that it was perilous. He says further that the evidence mentioned did not make it appear that there was imminent danger of injury to the truck driver from the approaching automobile when it was a mile and a quarter away, and that it is difficult to understand how the bread truck driver could have been in a position of peril at all until a very short time before the collision occurred. He points out that there was no evidence in the case showing what the driver of the automobile did or failed to do, or could have done, to avoid the collision after he discovered the bread truck driver's perilous position, if he did. He then said:

"A jury cannot find that a person failed to exercise ordinary care under the circumstances existing at a certain time when the evidence does not disclose what the circumstances were * * *. In the instant case, as has been said, there is no evidence showing when the plaintiff's position became perilous or that he was actually in a position of peril for any considerable time before he was struck and there is no evidence that the driver of the automobile failed to exercise ordinary care to avoid injuring the plaintiff." [138 Tex. 380, 159 S.W.2d 116.]

The reasoning of the Turner case applies to the theory in this case that Hensley did not stop the truck before striking Precise. The absence of proof of any overt act by Hensley from which the jury might have inferred that he realized Precise's perilous position renders such theory untenable.

Creech v. Thompson, supra, especially as it stood before such modification as it is given in Safeway Stores, Inc. v. White, lends some apparent support to the contention made by the appellee that when Precise gave Hensley a signal to stop, that it may be inferred and Hensley should have known, that Precise would remain between the truck and the wall, trusting Hensley to stop, and because he should have known that Precise would pursue such course of action Hensley realized Precise was in a position of peril and would be injured unless he did stop.

Though Safeway Stores, Inc. v. White appears to effectively discountenance such view, the appellees are faced with a different insurmountable obstacle. The obstacle is the absence of evidence of the time or distance at which the signal was given. Assuming giving the signal had the effect of causing Hensley to discover Precise's perilous position, the absence of evidence of the time or distance at which the signal was given makes it impossible to determine whether Hensley could have made the mental decision and physical effort necessary to prevent injury to Precise. It must be shown that there was time and opportunity to act. See R. T. Herrin Petroleum Transport Co. et al. v. Proctor, Tex., 338 S.W.2d 422; Terry v. English, 130 Tex. 632, 112 S.W.2d 446; Schuhmacher Co. v. Posey, 147 Tex. 392, 215 S.W.2d 880; Welch v. Ada Oil Company, Tex.Civ.App., 302 S.W.2d 175, n. r. e.

The original opinion dated March 7, 1961, and the opinion on motion for rehearing dated May 23, 1961, in both of which the same disposition was reached that is expressed here, are withdrawn in a vain search for brevity, and this opinion substituted therefor.

Appellees' cross assignments have been fully considered and are respectfully overruled. It appearing that the evidence does not support the jury's verdict, the second motion for rehearing is overruled. The judgment entered by the trial court must be reversed and judgment here rendered that

the appellees take nothing. It is so ordered.

FANNIN, J., concurs.

DAVIS, Justice.

I dissent. In view of *all* the evidence and the jury findings, I would affirm the judgment of the trial court.