**Eugene Ross SEARCY, Appellant,**

v.

**Parlie SELLERS, Appellee.**

**No. 8159.**

Court of Civil Appeals of Texas, Amarillo.

Aug. 2, 1971.

Rehearing Denied Aug. 30, 1971.

 

Underwood, Wilson, Sutton, Heare & Berry, H. C. Pipkin, Amarillo, for appellant.

Merchant & Barfield, Amarillo, Morehead, Sharp, Tisdel & Gibbins, Bob Gibbins, Plainview, for appellee.

ELLIS, Chief Justice.

This is a case involving the application of the doctrine of discovered peril in a rear-end automobile collision case. The case was tried before a jury which found that the defendant-appellant was guilty of primary negligence in certain particulars, but also found that plaintiff-appellee was guilty of contributory negligence. Additionally, the jury found the appellant guilty of discovered peril negligence, and on such basis the trial court entered judgment against appellant in the sum of $20,052.00, the amount of damages found by the jury. From such judgment the appellant has duly perfected his appeal. Neither party is challenging the jury's findings with respect to either the primary negligence of appellant or the contributory negligence of appellee. The disputed question for determination in this appeal is whether under the facts of this case the doctrine of discovered peril is applicable. Reversed and rendered.

Among other matters, the appellant is asserting "no evidence" points. Basically, it is appellant's position that there is no evidence to support the jury's findings that (1) appellant discovered and realized the appellee's perilous position in time to have that last clear chance accorded him by law to avoid the collision; and (2) appellant committed discovery peril negligence in the time and space afforded him to act after his discovery of the appellee's position of peril. These fundamental "no evidence" issues have been duly joined by counterpoints set out in appellee's brief.

The rule is well established that in considering "no evidence" points, the evi-

dence is to be viewed in the most favorable light in support of the jury's findings of fact, considering only the evidence and reasonable inferences which support the findings and rejecting the evidence and reasonable inferences which are contrary to the findings. In Re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951). Also, we recognize that in evaluating "no evidence" points in this case, it is not permissible to give any weight to the jury's other findings, and to determine whether after disregarding the jury's findings on primary and contributory negligence, there is evidence in the record of probative force to support the jury's findings on the discovered peril issues. Enloe v. Barfield, 422 S.W.2d 905 (Tex.Sup.1967). The ultimate issue to be determined is whether the facts and circumstances as disclosed by the record *in this case*, together with all reasonable inferences therefrom, constitute *some* evidence of probative force to support the jury's finding to the effect that the appellant *actually did discover and realize* that the appellee was in a position of peril *in time* to have avoided the collision by the use of all means at his command consistent with the safety of himself and his vehicle.

This particular legal confrontation on the vigorously contested issues involving the doctrine of discovered peril had its inception in a suit brought by plaintiff-appellee, Parlie Sellers, against defendant-appellant, Eugene Ross Searcy, seeking recovery for personal injuries she sustained as a result of the collision of the pickup vehicle driven by appellant with the rear portion of her automobile. The setting for the occurrence giving rise to this controversy is disclosed by the undisputed evidence hereinafter set out. On May 13, 1968, appellee, Mrs. Sellers, accompanied by her passenger, Mrs. Jerri Lester, was driving her automobile in a southerly direction in the right or west traffic lane of U. S. Highway 87, a four lane north-south highway, divided by a median with paved crossovers between the east and west traffic lanes at various intervals. Also, prior to the colli-

sion, appellant, Mr. Searcy had been driving his pickup southerly on the same right or west traffic lane of Highway 87 and following some distance behind the appellee's automobile. The collision occurred approximately seven miles north of Plainview, Texas. A third party, R. J. Moses, who had been traveling in a northerly direction on U. S. Highway 87, shortly before the collision, had negotiated a left turn on a paved crossover preparatory to returning to his house located to the west of the two southbound traffic lanes. Just prior to the collision, R. J. Moses stopped in the crossover facing westward waiting for the two southbound vehicles of appellant and appellee to pass before proceeding across the southbound lanes of the highway into the driveway leading to his house on the opposite side. It is further undisputed that at the scene of the collision there were only the three vehicles in sight, the appellee's automobile with the appellee as driver accompanied by her passenger, Mrs. Jerri Lester, the appellant's pickup with the appellant as the sole occupant, and the R. J. Moses automobile in which he was the sole occupant. These four named persons were the sole witnesses to the events occurring prior to and at the time of the collision and each appeared and testified during the trial of the case. It is also undisputed that the collision occurred in daylight and clear weather, and there were no obstructions of view to prevent appellant from observing the appellee's vehicle ahead of him.

▬ We deem it appropriate to review that portion of the evidence from the witnesses, together with the attendant conditions and circumstances, pertinent to the vital question as to the existence or nonexistence of the requisite evidence to establish liability against the appellant for discovered peril negligence. Preliminarily, it is here noted that recovery under the doctrine of discovered peril is confined within the limits of rather exacting guidelines and presents a comparatively narrow issue. R. T. Herrin Petroleum Transport Co. v.

Proctor, 161 Tex. 222, 338 S.W.2d 422 (1960). Further, the jury's findings on primary and contributory negligence are immaterial in passing upon the issue of discovered peril negligence. Parks v. Airline Motor Coaches, Inc., 145 Tex. 44, 193 S.W.2d 967 (1946); Enloe v. Barfield, supra. Additionally, when the defendant has been found guilty of primary negligence and the plaintiff guilty of contributory negligence proximately causing the occurrence in question, discovered peril negligence is based upon a new duty which arises only *after* discovery and realization of the perilous position of the other party. R. T. Herrin Petroleum Transport Co., et al, supra; Texas and Pacific Railway Company v. Meeks, 338 S.W.2d 169 (Tex. Civ.App.—Eastland 1960, writ ref'd n. r. e.). Another significant principle is that discovered peril negligence involves the existence of a last clear chance to avoid the injury after discovery and realization of another's perilous position. In this connection, in the case of Schuhmacher Co. v. Posey, 147 Tex. 392, 215 S.W.2d 880, 882 (1942), the court stated:

"The doctrine of discovered peril or last clear chance means that the last clear chance must be a clear one * * * it implies thought, appreciation, mental direction and lapse of sufficient time to act effectually upon the impulse to save another from injury. * * *

"As has been so frequently said, this doctrine is a humanitarian one, and evidence convicting a person of the rather grave fault of neglecting to act to avoid injuring another whom he has discovered in a position of peril must not be imputed or presumed. * * *"

Other principles and standards governing the applicability of the discovered peril doctrine as established by the case law of this state will be set out following a review of certain testimony of witnesses and circumstances considered significant in this case.

The appellee, Parlie Sellers, testified that she was driving at a speed of about 55 to 60 miles per hour as she approached the area in which the collision occurred. Prior to her arrival to a point even with the crossover above mentioned, she observed the Moses automobile make a left turn from the northerly lane of traffic into the crossover with its signal lights blinking, and coming to a complete stop inside the crossover. Also, by looking into her rearview mirror, she had previously observed the appellant's pickup following in the same traffic lane behind her. She was not aware of the distance that the pickup was behind her at the time she observed the Moses vehicle turn into the crossover. She further testified that upon seeing the Moses vehicle make its turn into the crossover she raised her foot from the accelerator so she could slow down and have a chance to stop if the Moses vehicle pulled in front of her. By taking her foot off the accelerator she slowed down her vehicle, and she testified that at no time prior to the collision did she touch the brake pedal, give any signal to the vehicle behind her, apply her brakes or stop her vehicle. She further testified that it was "a short period of time" after she raised her foot from the accelerator until her vehicle was hit from the rear by the appellant's vehicle.

Mrs. Jerri Lester, appellee's passenger, generally corroborated the testimony of Mrs. Sellers regarding speed, lack of application of brakes or stopping, noted no significant change of speed of appellee's automobile prior to the collision and further testified that Mrs. Sellers "had no reason to stop."

Mr. R. J. Moses who was stopped in the crossover facing westward, toward the southbound lanes of traffic observed the collision as it occurred in front of him. He stated that when he first noticed the approaching vehicles, the appellant's pickup was approximately one hundred yards behind the appellee's automobile and both vehicles were traveling at an estimated speed

of forty-five miles per hour. He further testified that the appellee's automobile came to a complete stop in the west lane of the southbound traffic lanes and that appellant's pickup ran into the stopped vehicle. He was unable to state with certainty as to whether the stopping by appellee was gradual or sudden. He also stated that he was only watching the vehicles and not the persons, and that the appellant's pickup came heading on toward appellee's vehicle after she was in a stopped position. He further stated that there was a barrow ditch along and beyond the paved shoulder on the west side of the southbound traffic lanes and that there was a dip in the barrow ditch area where his driveway crossed the ditch. He stated also that the time between the appellee's slowing and stopping was "a very short time" and that it "all happened pretty fast."

The appellant, Mr. Searcy, testified that prior to the collision he was traveling in the west lane of the southbound traffic lanes at a speed of about fifty miles per hour. He stated that he initially observed the appellee's automobile ahead of him at a distance of possibly a mile, and, at a distance of from one-quarter to one-half mile he noticed that he was gaining on her and would possibly be required to pass her, but he didn't keep his "eyes glued on her all the time." He also gave testimony to the effect that he subsequently noticed that she "stopped fast" or suddenly when she was about 80 to 100 feet in front of him and that this particular instant was the first time that he was aware she was not continuing to move and had stopped. Also, he said that he didn't see her slow down or make any manifestation by brake-lights, signals, or otherwise, to warn him that she was going to stop her vehicle. He stated, also, that following his discovery and realization that she had stopped in front of him, he threw on his brakes and tried to turn to the right leaving forty-three feet of skid marks prior to colliding with the rear portion of appellee's automobile. Further, he stated that the impact resulting from the collision caused his vehicle to go

off the pavement to the right and knocked appellee's vehicle forward off the pavement to the left. Appellant also testified that upon discovery that appellee had stopped, he was nearer to the right than left side of appellee's vehicle, and that he turned to the right rather than to the left because it appeared to him that the right turn was the better of the two alternatives when turning with his wheels locked by his brakes. In this connection he stated that his turning to the left would have required the sharper turn as it would be necessary to attempt to go between the left side of appellee's automobile and the front of the Moses vehicle stopped in the crossover just to the left of appellee's stopped automobile under circumstances indicating considerable likelihood of colliding with the Moses automobile.

Roy Jordan, appellee's son-in-law, Mrs. Bill Warren, an acquaintance of appellee, and Corene Tanner, appellee's daughter, who were called as witnesses by appellee, testified to the effect that appellant stated to each of them after the collision that he didn't see Mrs. Sellers' automobile until he hit her. Mr. Searcy denied making such statement.

■ The elements of discovered peril involve the exposed condition of the plaintiff (appellee), an actual discovery by the defendant (appellant) in time to avert the injury by the use of all means at his command commensurate with his own safety, and failure to use such means. Turner v. Texas Co., 138 Tex. 380, 159 S.W.2d 112 (1942). As applied in Texas, an *actual discovery* of the perilous position of the injured party is essential in establishing discovered peril negligence and it is not enough that the defendant should have or could have by reasonable care realized or had knowledge of the perilous position of the plaintiff, or was negligent in not discovering it, but it must be shown that he *actually possessed such knowledge*. Turner v. Texas Co., supra; Keith v. Ledbetter, 431 S.W.2d 433 (Tex.Civ.App.—Amarillo 1968, writ ref'd n. r. e.). In addition to

such proof of discovery and realization of appellee's perilous position, it must be shown that appellee was pursuing and probably would pursue a course of action likely to result in an injury. Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561 (1952); Safeway Stores, Inc. v. White, 162 Tex. 473, 348 S.W.2d 162 (1961). Also, the *Ford* case pointed out that the standard of proof required to support the jury's findings on the elements of discovered peril is proof of such facts and circumstances, as taken together with all reasonable inferences therefrom, constitute some evidence of probative force of their existence.

■ The burden of proof rests upon the appellee to establish by a preponderance of the evidence the elements of discovered peril. Gentry v. Southern Pacific Company, 457 S.W.2d 889 (Tex.Sup.1970) and cases cited therein. It cannot be presumed that appellant was guilty of violating the new duty imposed upon him. Parks v. Airline Motor Coaches, supra. The fact of timely realization of the perilous position of the injured person may be established by circumstantial evidence, but in the absence of direct evidence, appellee is required to prove facts and circumstances from which it can be fairly inferred that appellant became aware of the peril. Safeway Stores, Inc. v. White, supra; Creech v. Thompson, 156 Tex. 561, 297 S.W.2d 817 (1957). A jury is not privileged to indulge in surmise or speculation, for there must be a factual basis for the inferences drawn. Heavy Haulers, Inc. v. Precise, 348 S.W.2d 653 (Tex.Civ.App.—Texarkana 1961, writ ref'd n. r. e.).

■ A review of the testimony given by the various witnesses, without considering at this time the testimony of the appellant, supplies no evidence that Searcy actually discovered the appellee's position of peril before the collision in time to avoid it. Neither appellee, Mrs. Sellers, Mrs. Lester, her passenger, nor the third party witness, Mr. Moses, testified as to any words spoken or overt acts by the appellant, or concerning any fact or circumstance that would indicate that he, the appellant, actually discovered or realized that appellee had stopped in front of him, or had changed her previous course of action in any manner, in time for him to take any evasive action. The testimony of Roy Jordan, Mrs. Bill Warren and Corene Tanner in no way served to establish timely discovery and realization of appellee's perilous position prior to the collision. In effect, such testimony to the effect that he didn't see her automobile until he hit her tends to support exoneration of the appellant from discovered peril negligence. Safeway Stores v. White, supra; Turner v. Texas Co., supra.

■ An analysis of the testimony of the appellant Searcy fails to disclose any evidence that he actually discovered and realized that appellee had entered a position of peril in time for him to avoid the collision. It is recognized that Searcy is a party to the suit; however, the court pointed out in Texas & N. O. R. Co. v. Grace, 144 Tex. 71, 188 S.W.2d 378 (1945) that the fact that testimony of an interested witness is not accepted in his favor does not operate to convert it into evidence against him. In the case of R. T. Herrin Petroleum Transport Co. v. Proctor, supra, 338 S.W.2d p. 427, the court stated:

"* * * testimony from an interested witness, while it need not be accepted as true by a jury, is not evidence that the exact opposite of what the witness said is true. There must be some circumstance supporting the conclusion that a situation opposite to that depicted by the witness actually existed. * * *"

■ A consideration of the various circumstances does not operate to disprove, but rather to corroborate the testimony of the appellant. We find no circumstances from which it might be inferred that appellant had accomplished actual discovery and realization of plaintiff's perilous position in time to avert the injury. Although

he may have been generally aware of her automobile when he was within one-half mile of her and realized there might come a time when he should pass her, there is no evidence of the existence of a condition of peril at that time, and there is no evidence that she warned him in any manner that she was changing her previous course of action, and when he actually discovered her perilous position he was within 80 to 100 feet of her. Thus, the "actual discovery" evidence, is supplied solely by appellant's testimony. Contradictory inferences were required to come from other sources and no such contradictory evidence is in the record. Texas & N. O. R. Ry. Co. v. Grace, supra; R. T. Herrin Petroleum Co. v. Proctor, supra. When testimony furnished by the appellant is accepted to supply the essential element of actual discovery, it is proper to receive and accept his testimony to the effect that at the time of such discovery of appellee's perilous position, he was traveling at the rate of 50 miles per hour at a distance of 80 to 100 feet from his pickup to appellee's stopped vehicle in his path. At the instant of such discovery, appellant applied his brakes, skidded 43 feet while at the same time attempting to turn to the right before colliding with appellee's automobile and these matters are not contradicted by other evidence. See Missouri-Kansas-Texas Railroad Company of Texas v. McFerrin, 156 Tex. 69, 291 S.W.2d 931, 944 (1956); Welch v. Ada Oil Company, 302 S.W.2d 175, 179 (Tex.Civ.App.—Texarkana 1957, writ ref'd n. r. e.). In this connection, it is pointed out that courts will take judicial notice of natural forces as well as the primary laws of physics, mechanics, and mathematics. Levlon v. Dallas Ry. & Terminal Co., 117 S.W.2d 876 (Tex.Civ.App.—Dallas 1938, writ ref'd). Also, it is a matter of common knowledge that skidding of an automobile results in loss of control by the driver. Dallas Ry. & Terminal Co. v. Garrison, 45 S.W.2d 183 (Tex.Com.App., 1932). Further, it is generally recognized that three-fourths of a second is required for a normal driver to react to danger.

Murphy v. Whitehurst, 300 S.W.2d 758 (Tex.Civ.App.—San Antonio 1957, writ ref'd n. r. e.). As a physical fact, if the appellant's automobile were traveling 50 miles per hour (73⅓ feet per second), and the discovery of appellee's perilous situation were accomplished when he was 100 feet behind her, mathematical computation establishes that had he not applied his brakes the 100 feet would have been covered in 1.36 seconds, and that his vehicle would have traveled 55 feet before he could have reacted to apply the brakes or turn the steering wheel, leaving only 45 feet of space between the pickup and appellee's automobile. These circumstances combined with the appellant's testimony that he left 43 feet of skid marks after applying his brakes reasonably support the inference that the time and space were too short after actual discovery for him to have the recognized last clear chance. Rather, it appears obvious that under all of the reasonable inferences from the circumstances and conditions, the period of time between discovery and reaching the vehicle ahead of him was too short to allow anything more than instinctive and impulsive reactions to the immediate danger which are insufficient to constitute discovered peril negligence. Keith v. Ledbetter, supra; Waldeck v. Watts, 326 S.W.2d 913 (Tex.Civ.App.—San Antonio 1959, writ ref'd n. r. e.).

The appellee has pointed out that the appellant made the statement to the effect that he saw appellee "stop fast" or "suddenly stopped" and that Mr. Moses, the third party witness, made the statement that he (Moses) saw appellee "stopped" when appellant was about 100 yards to her rear. However, Moses did not testify that he and appellant saw appellee "stopped" at the same time. We cannot agree that testimony of this character from the two parties constituted probative support for an inference that appellant actually saw or discovered appellee's automobile in a stopped position when he was about 100 yards behind her. Further, consideration

should be given to the differences in position, motion, line of vision and perspective of the two parties.

The fact that there was no obstruction of view in the vicinity of the collision and appellant was in a position to observe appellee's vehicle for a mile or so before the collision are not within themselves circumstances from which timely actual discovery and realization can be inferred. As was pointed out in Turner v. Texas Co., supra, the fact that the driver of the automobile had the other vehicle under observation for the time it took to drive a mile or more is no evidence tending to prove when the truck driver's position became perilous, or when the automobile driver discovered or realized it was perilous. The present applicable law in Texas in this regard is summarized in the following language set out in Heavy Haulers, Inc. v. Precise, supra:

" * * * No case has come to the attention of the court in which the operator's realization of the injured party's peril, a subjective condition of the operator's mind, has been inferred simply because the injured party was visible at all times to the operator of the moving vehicle inflicting injury."

Thus, a full consideration of all pertinent testimony of the witnesses and the circumstances supports the conclusion that no witness or circumstance contradicts the testimony of the appellant.

The appellee has cited various cases, but the great majority of such cases involve an admission or statement by the operator of timely discovery and the existence of circumstances from which it could be reasonably inferred that after such discovery the operator failed to take appropriate evasive action. The case of Ford v. Panhandle & Santa Fe Ry. Co., supra, has been strongly urged by appellee in support of her position. It is our opinion that the instant case is distinguishable on the facts. In the Ford case, actual discovery of the peril occurred at a time when the movements of the automobile which was stricken were, under the evidence, reasonably predictable, and the train was far enough back that it could have been reasonably inferred that the operator failed to apply his brakes when he had time to do so, and could thereby have reduced the speed of the train sufficiently to have averted the collision. A review of the pertinent cases indicates clearly that the holding of the Ford case has generally been rejected where the peril is brought on by the injured party changing from one course of conduct to another, or by committing an act which the party charged is not required to anticipate from what he actually saw on the occasion in question. We do not agree that *Ford* is applicable in the present case. Also, the appellant has cited the recent case of Hinojosa v. Stephens, 461 S.W.2d 232 (Tex. Civ.App.—Houston (14th District) 1970, writ ref'd n. r. e.), involving the application of the doctrine of discovered peril in a rear-end automobile collision case. It is our opinion that the facts in that case are also distinguishable from those in the instant case. Under the evidence in the Hinojosa case, when the defendant put on his bright lights, *he saw* "two people together in a car parked there" one block to one and one-half blocks away. Also, the evidence showed that the defendant was traveling not more than an estimated 37 miles per hour. The defendant applied his brakes but took no further evasive action. Also, the court's opinion points out that the defendant realized that if he continued in the lane he was in at the speed he was going that there would be a collision. In the instant case we have no comparable evidence or inferences of timely discovery and realization of the peril or of the driver's failure to use the means available to avoid the collision.

A review of the record indicates that all of the evidence available in this case on the discovered peril issues was fully developed. After considering all the testimony and circumstances and the reasonable in-

ferences therefrom, we hold there is no evidence as required showing that appellee's evidence measures up to the quantum of proof essential to support the jury's findings on the discovered peril issues.

Since both appellant and appellee have been found guilty of negligence proximately causing the collision in question and such findings are in no way challenged, in view of our holding herein on the question of discovered peril, we deem it unnecessary to pass upon the other points presented.

The judgment of the trial court is reversed and judgment is herein rendered that plaintiff-appellee take nothing.